LISA BISHEL *v.* CONNECTICUT YANKEE ATOMIC POWER COMPANY, INC.
(AC 19464)

Landau, Spear and Hennessy, Js.

Argued September 13, 2000—officially released April 3, 2001

*Matthew Shafner*, with whom was *Amy M. Stone*, for the appellant (plaintiff).

*John R. Horvack, Jr.*, with whom, on the brief, was *Maureen Danehy Cox*, for the appellee (defendant).

*Opinion*

LANDAU, J. In this negligence action, the plaintiff, Lisa Bishel, appeals from the summary judgment the trial court rendered in favor of the defendant, Connecticut Yankee Atomic Power Company, Inc.[1] The essence of the plaintiff's claim on appeal is that the court improperly concluded that there was no genuine issue of material fact that the defendant was immune from civil liability as a matter of law because it had paid the plaintiff workers' compensation benefits pursuant to General Statutes § 31-291.[2] The plaintiff claims that

[1] The trial court denied the plaintiff's cross motion for summary judgment.

[2] General Statutes § 31-291 provides: "When any principal employer procures any work to be done wholly or in part for him by a contractor, or through him by a subcontractor, and the work so procured to be done is a part or process in the trade or business of such principal employer, and is performed in, on or about premises under his control, such principal employer shall be liable to pay all compensation under this chapter to the same extent as if the work were done without the intervention of such contractor or subcontractor. The provisions of this section shall not extend immunity to any principal employer from a civil action brought by an injured employee or his dependent under the provisions of section 31-293 to recover damages resulting from personal injury or wrongful death occurring on or after May 28, 1988, *unless such principal employer has paid compensation*

there is a genuine issue of material fact as to whether there is an agency relationship between the defendant and Northeast Utilities Service Company (Northeast). We affirm the trial court's judgment.

The plaintiff commenced this action on September 3, 1997.[3] The complaint alleges, in part, that on December 15, 1995, the plaintiff was employed by Burns International Security Services (Burns) at the defendant's power plant in East Hampton when she slipped and fell on the defendant's sidewalk due to an accumulation of ice. As a result of the defendant's alleged negligence, the plaintiff sustained serious and permanent injuries to her left knee, and she incurred damages for medical treatment and lost wages. She also alleged that she had been paid medical and compensation benefits pursuant to our Workers' Compensation Act (act), General Statutes § 31-275 et seq. The plaintiff sought damages pursuant to General Statutes § 31-293, which permits employees and employers to recoup damages from third parties who are liable for injuries that an employee sustains during the course of employment.

The plaintiff subsequently amended her complaint, and the defendant filed an answer, two revised special defenses and a claim for setoff. The defendant's second special defense alleged that it was immune from liability because it was the plaintiff's principal employer and because it had paid workers' compensation benefits to the plaintiff pursuant to § 31-291 for the injuries that she alleged in her complaint. The defendant attached to its pleading four exhibits itemizing the benefits that

*benefits* under this chapter to such injured employee or his dependent for the injury or death which is the subject of the action." (Emphasis added.)

[3] We note that the deputy sheriff's return provides in relevant part that he left the writ of summons and complaint "in the hands of Theresa Allsop, Assistant Secretary/Senior Counsel of Northeast Utilities and duly authorized to accept service on behalf of the within named Defendant, Connecticut Yankee Atomic Power Company, Inc."

it had paid the plaintiff as of September 15, 1998.[4] The defendant also alleged, by way of a claim for setoff, that, pursuant to the act, it had provided the plaintiff with medical and compensation benefits, and that it may be obligated to provide benefits in the future. The plaintiff filed a single general denial of the defendant's special defenses and claim for setoff.[5]

The defendant also intervened in the action as a plaintiff, alleging in a substitute complaint that "[p]ursuant to a contract between Burns and [the defendant] and [the defendant's] obligations under General Statutes § 31-291, [the defendant], through Liberty Mutual Group, provided [the plaintiff] with medical attention and has expended significant sums for said medical attention" and compensation.[6]

In April, 1998, the plaintiff filed an unsuccessful motion for summary judgment with respect to the defendant's intervening complaint, arguing primarily that the defendant was not her principal employer. In support of its objection to the motion for summary judgment, the defendant submitted an affidavit of John H. Ireland. Ireland attested that he was employed by Northeast as the director of claims and insurance, and that he had personal knowledge of the facts contained in the affidavit. He also attested that through Northeast, the defendant retained Liberty Mutual Group (Liberty Mutual) to administer an owner controlled insurance program and that to date, Liberty Mutual had directed the payment of workers' compensation benefits to the

[4] One of the exhibits is titled, "Managed Services & Payments."

[5] The better method of pleading is to reply to each special defense and setoff separately. See Practice Book § 10-56.

[6] Burns also filed a motion to intervene in the action, alleging that "[b]y virtue of a Policy of Insurance, [Burns] has paid and has become obligated to pay sums of [moneys] to and on behalf of the said plaintiff" pursuant to the act for the injuries that the plaintiff had sustained in the course of her employment on the defendant's property. Burns is not a party to this appeal. See footnote 12.

plaintiff in excess of $74,000. Under the owner controlled insurance program, Northeast, on behalf of the defendant, supplied the funds to Liberty Mutual by which it compensated the plaintiff.[7]

In November, 1998, the defendant moved for summary judgment on the basis of the plaintiff's amended complaint and its revised second special defense. The defendant claimed that there was no genuine issue of material fact that because it had paid the plaintiff's compensation benefits, it was immune from civil liability pursuant to § 31-291. In support of its motion, the defendant submitted affidavits from Ireland;[8] Susan Flesch, personnel specialist at Burns;[9] James Pandolfo, a manager of security services for the defendant; and Howard Heilweil, a claims team manager for Liberty Mutual.[10] The defendant also attached a copy of the relevant legislative history for the 1989 revision to § 31-291.[11]

---

[7] The court granted the plaintiff permission to file supplementary interrogatories and requests for production, but the supplemental discovery concerned the removal of snow and ice on the defendant's property, not the payment of compensation benefits or the agency relationship between Northeast and the defendant.

[8] A copy of the owner controlled insurance policy was attached to Ireland's affidavit.

[9] Flesch attested that "Burns' employees, including [the plaintiff], are entitled to workers' compensation benefits under the Owner Controlled Insurance Program if they sustain a work-related injury while on premises controlled by [the defendant]. . . . The Owner Controlled Insurance Program was not in any way established or funded by Burns."

[10] In his affidavit, Heilweil attested that he had personal knowledge of the statements he was making, that Liberty Mutual "is the administrator of an Owner Controlled Insurance Program under which [the defendant] is an owner," that the benefits paid to the plaintiff were not paid by Liberty Mutual as an insurer for Burns, and that "the plaintiff was paid by Liberty Mutual with funds supplied to it by [Northeast] for the benefit of [the defendant]."

[11] During the discussions concerning the adoption of an amendment to § 31-291 that limited immunity for principal employers, Public Acts 1988, No. 88-226, §1, Representative Joseph A. Adamo responded to a question from Representative Linda N. Emmons that asked whether a general contractor or a principal employer would be immune from civil liability if it paid for workers' compensation insurance for its subcontractors. Representative

The plaintiff objected to the defendant's motion for summary judgment and moved for summary judgment herself, attaching copies of the checks issued to her by Liberty Mutual that indicated that Burns was her employer. In objecting to the defendant's motion, the plaintiff reasoned that the facts and exhibits demonstrated that the workers' compensation benefits were paid to her by or on behalf of Burns and that the defendant had paid moneys to Liberty Mutual pursuant to a contractual, not a statutory, obligation. The plaintiff did not dispute that the defendant was her principal employer, only whether the defendant had paid her compensation benefits.[12]

The court granted the defendant's motion for summary judgment, noting that the owner controlled insurance policy provides in relevant part: "Northeast Utilities [as managing agent for the defendant] . . . has agreed to fulfill all present and future obligations of the named insured [Burns] with respect to the payment of premiums under said policy." The policy also indicates that the defendant is an alternate employer to Burns. The court concluded that there was no dispute that Burns was the plaintiff's employer and that the plaintiff had presented no evidence to contradict the defendant's evidence that Northeast had paid the plaintiff's compensation benefits or to show that Burns had paid the benefits. The plaintiff appealed.

Adamo stated: "You're absolutely right . . . . If the principal employer or the general contractor wanted to go out and buy workers' compensation insurance for four or five other subcontractors' employees at the premiums that they are today, so be it. I guess he could. And once he paid those benefits, yes, he would be immune because he's in fact the person paying the workers' [compensation] benefits." 31 H.R. Proc., Pt. 11, 1988 Sess., p. 3729.

[12] Although Burns intervened in the action to recoup the benefits it allegedly had paid the plaintiff, it did not file an objection to the defendant's motion for summary judgment or an affidavit contradicting the affidavits submitted by the defendant.

"The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. . . . When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *SLI International Corp.* v. *Crystal,* 236 Conn. 156, 163, 671 A.2d 813 (1996). Our review of the trial court's granting of a motion for summary judgment is, therefore, plenary. See id. The record before the trial court is identical to the record before this court. See id.

"The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) *Altfeter* v. *Naugatuck,* 53 Conn. App. 791, 800–801, 732 A.2d 207 (1999). "[I]t [is] incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exits." (Internal quotation marks omitted.) *Dinnis* v. *Roberts,* 35 Conn. App. 253, 260, 644 A.2d 971, cert. denied, 231 Conn. 924, 648 A.2d

162 (1994). "A defendant's motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact. *Perille* v. *Raybestos-Manhattan-Europe, Inc.*, 196 Conn. 529, 543, 494 A.2d 555 (1985)." (Internal quotation marks omitted.) *Brunswick* v. *Safeco Ins. Co.*, 48 Conn. App. 699, 704, 711 A.2d 1202, cert. denied, 247 Conn. 923, 719 A.2d 1168 (1998).

The plaintiff raised the following issues on appeal: (1) whether the trial court improperly concluded that the defendant was immune from liability under § 31-291 where (a) the affidavits submitted indicate that Northeast paid the moneys to Liberty Mutual and (b) Burns filed a motion to intervene in the action, alleging it had paid the compensation benefits;[13] and (2) whether the trial court improperly inferred that an agency relationship existed between the defendant and Northeast. During oral argument before us, the plaintiff conceded that Northeast, not Burns, had paid her compensation benefits.

In her brief, the plaintiff argues that the court's decision was *clearly erroneous* because it inferred an agency relationship between the defendant and Northeast. The clearly erroneous standard does not apply to motions for summary judgment. We undertake a plenary review of the court's legal conclusions. See *Richter* v. *Danbury Hospital*, 60 Conn. App. 280, 286, 759 A.2d 106 (2000).

In its brief here, the defendant pointed out that the plaintiff did not raise before the trial court her claim regarding the agency relationship between Northeast and the defendant, a point the record substantiates. In her reply brief, the plaintiff sought plain error review of this claim. Our Supreme Court has repeatedly stated

---

[13] See footnote 6.

that "issues not properly raised before the trial court will ordinarily not be considered on appeal." (Internal quotation marks omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 48, 717 A.2d 77 (1998). "A plaintiff cannot try his case on one theory and appeal on another." *McNamara* v. *New Britain*, 137 Conn. 616, 618, 79 A.2d 819 (1951). Furthermore, a party may not seek plain error review for the first time in her reply brief. *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, supra, 48 n.42. We therefore decline to review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.