CAROL TAYLOR *v.* JOSEPH TAYLOR
(AC 17677)

Foti, Zarella and Dupont, Js.

---

Argued January 13—officially released May 2, 2000

*Raymond L. Baribeault, Jr.*, with whom, on the brief, was *Jeffrey W. Hill*, for the appellant (defendant).

*Stephen E. Reck*, for the appellee (plaintiff).

### Opinion

DUPONT, J. This is an appeal by the defendant, Joseph Taylor, from the judgment of the trial court granting the motion of the plaintiff, Carol Taylor, to compel the defendant specifically to perform the terms of the parties' separation agreement pertaining to certain stock options. The agreement was executed in connection with an action for the dissolution of the marriage of the parties. The primary issue is whether the stock options to be divided, as provided in the

agreement, include both exercisable and nonexercisable options. The defendant also appeals from the denial of his motion to reargue and for reconsideration. We affirm the judgment of the trial court.

The basic claim of the defendant is that by granting the motion to compel,[1] the court impermissibly modified the property provisions of the parties' separation agreement. The agreement became "a part of the file," and the judgment of dissolution of marriage recited its terms. At issue is the construction of paragraph six of the property settlement section of the agreement, which is part of the judgment and an order of the court.[2] The

---

[1] The plaintiff filed both a motion to compel, dated August 28, 1997, and a motion to open the judgment, dated August 18, 1997, because of "mutual misunderstanding between the parties or, in the alternative," because the defendant is "attempting to misconstrue the agreement of the parties to his advantage." At oral argument in the trial court, the plaintiff elected to proceed on the motion to compel only. We do not consider the motion to open the judgment as an admission of the plaintiff that the agreement is ambiguous.

[2] The agreement provides in relevant part: "As it relates to the division of the remaining stock options, [the defendant] shall receive one-half plus $20,000.00 of the remaining options vested as of the date of dissolution. The additional value represents his share of the equity from the marital residence. Therefore, [the plaintiff] shall receive one-half of the options less $20,000.00, valued as of the same date. In order to effect this division and to compensate [the defendant] for his share of the [marital residence] equity remaining with [the plaintiff], the parties shall consult with the same certified public accountant to determine the amount of shares and the options that should be assigned to [the defendant]. After that is accomplished, the remaining shares shall simply be divided equally between the parties. Options shall be divided evenly as to each group which becomes exercisable. Parties may exercise immediately when options available or may chose to hold for higher return. Because [the defendant] is the only person permitted to exercise these options, he shall then exercise and sell [the plaintiff's] remaining shares at times specified by [the plaintiff] such that she is awarded the net amount of these shares. The net amount shall be defined as the same formula heretofore defined in the College Educational paragraph. All assignments from the Pfizer savings investment plan and Irish 401k Plan shall be assigned to [the plaintiff] by way of Qualified Domestic Relations Order. The court shall retain jurisdiction over the Qualified Domestic Relations Order and the actual division of these assets in order to effect the intent of this agreement."

court ordered the defendant to divide all stock options granted to him at the time of the dissolution on July 25, 1997. The court, in its memorandum of decision, emphasized the words of the agreement, which provided that the parties will divide "the remaining options vested as of the date of dissolution." The court held that the agreement dealt with stock options, both exercisable and nonexercisable, and that if the defendant owned the options on the date of dissolution, they were subject to and covered by the parties' agreement. The defendant argued to the trial court, as he does to this court, that options that had been granted as of the time of the dissolution but were not yet exercisable were not included in the division. The defendant claims that the court impermissibly modified a postjudgment property distribution to which the parties had agreed.

An agreement of the parties executed at the time of dissolution and incorporated in the judgment is a contract of the parties. *Issler* v. *Issler*, 250 Conn. 226, 234–35, 737 A.2d 383 (1999). The construction of a contract to ascertain the intent of the parties is a question of law when the contract is unambiguous within the four corners of the instrument. See *Grass* v. *Grass*, 47 Conn. App. 657, 662, 706 A.2d 1369 (1998). Our review in such cases is plenary. See *Branch* v. *Occhionero*, 239 Conn. 199, 205, 681 A.2d 306 (1996). We conclude that in this case the language of the parties' agreement is unambiguous.

The plaintiff relies on the case of *Bornemann* v. *Bornemann*, 245 Conn. 508, 752 A.2d 978 (1998), which had not yet been decided at the time the motion to compel was heard or this appeal was taken, but which had been decided at the time the trial court articulated its decision and at the time the briefs and oral argument were presented to this court. We may apply it retroactively to the extent that it is relevant because the judgment in *Bornemann* is not limited by its terms to

prospective application in other cases and the present case was pending in this court at the time *Bornemann* was decided. *Marone* v. *Waterbury*, 244 Conn 1, 10–11, 707 A.2d 725 (1998); *Perkins* v. *Fasig*, 57 Conn. App. 71, 75, 747 A.2d 54 (2000).

*Bornemann* held that stock options not yet vested are marital property and are available for distribution pursuant to General Statutes § 46b-81. *Bornemann* v. *Bornemann*, supra, 245 Conn. 514–15. The court in *Bornemann* was not involved in the interpretation of an agreement of the parties as is true here.[3] In the present case, unlike in *Bornemann*, we must determine if the intent of the parties was to include both exercisable and not yet exercisable stock options in the language of the agreement.

The defendant argues that although *Bornemann* would not prevent the parties from entering into an agreement that provided that the plaintiff would receive exercisable and nonexercisable stock options, they did not so agree. The defendant, therefore, views the order of the trial court as a modification of the agreement. The defendant asserts that the agreement is clear and unambiguous and does not include a division of "all stock options which were granted to [the defendant] as of July 25, 1997," as the court ordered, but only those that had vested. The defendant views "vested" as meaning exercisable as of the date of the dissolution. The question is whether, when read in the context of the entirety of paragraph six, the parties intended unam-

---

[3] To the extent that the defendant seeks to use *Bornemann* v. *Bornemann*, supra, 245 Conn. 517–18, for the proposition that the definition of vested is restricted to only options that have matured, we disagree. We do not interpret *Bornemann*'s statement that the stock options in that case were marital property despite the fact that the stock options had not matured or vested at the time of the dissolution to mean that matured and vested are synonymous. We note that "matured" and "vested" are in quotes and separated by the disjunctive "or" in that sentence of *Bornemann*. Id., 517.

biguously to include all options, whether exercisable or not yet exercisable, in the word "vested."

The Superior Court has jurisdiction to assign property in connection with a dissolution of marriage action, in accordance with § 46b-81, but unlike periodic alimony or child support, which usually are modifiable, the assignment of property is nonmodifiable. *Bunche* v. *Bunche*, 180 Conn. 285, 289, 429 A.2d 874 (1980); *Berg* v. *Berg*, 24 Conn. App. 509, 513, 589 A.2d 885, cert. denied, 219 Conn. 908, 593 A.2d 134 (1991). The defendant claims that the court improperly construed the word "vested" in the agreement to include options that are both exercisable as of the date of the dissolution and not yet exercisable as of the date of dissolution.

The agreement provides that "[o]ptions shall be divided evenly as to each group which *becomes* exercisable." (Emphasis added.) The word "becomes" implies a future event. The word "becomes," as used, indicates that some options that are the subject of the agreement are presently exercisable and that some will become exercisable in the future.

Section 46b-81 does not define "vested," and we may, therefore, look to common usage and dictionaries for its definition. *Lopiano* v. *Lopiano*, 247 Conn. 356, 364, 752 A.2d 1000 (1998). "Vested" is a term of art meaning a fixed right in the present to enjoy a right that can exist in the future. Ballentine's Law Dictionary (3d Ed. 1969). The fact that a right is contingent on a future event does not mean that the right is only an expectancy. A vested right can be contingent on a future event, such as continued employment or death. *Krafick* v. *Krafick*, 234 Conn. 783, 788 n.12, 797, 663 A.2d 365 (1995). Although it is instructive to refer to common usage and dictionaries for the meaning of the word "vested," this case does not turn on any classic definition of the word or on its definition in cases that do not involve a written

agreement of the parties; see *Bornemann* v. *Bornemann*, supra, 245 Conn. 517–18; but concerns the meaning of it as used by the parties in their particular agreement.

In the parties' agreement, the intent manifested by the words used is that the stock options described as "vested" are those presently existing, which encompass two types, those exercisable and those not yet exercisable. Extrinsic evidence that a third party, such as the defendant's employer, would define "vested" differently is irrelevant when the words of the agreement plainly indicate otherwise.

The contract here is not ambiguous, and the vested options, whether matured or not yet matured, were included in the parties' agreement as a matter of law. The court did not open the judgment or modify it, but compelled the defendant to comply with the judgment.

The defendant also claims that the court improperly denied his motion to reargue and for reconsideration. Our standard of review regarding challenges to a trial court's ruling on such a motion is abuse of discretion. *Federal Deposit Ins. Corp.* v. *Thompson*, 56 Conn. App. 82, 89, 741 A.2d 972 (1999). In his motion, the defendant made the same claims to the court as he did at trial, and failed to present to the court any new claims or authority that would warrant the court's changing its decision. The court, therefore, had no reason to exercise its discretion in favor of the defendant on the basis of the claims presented in his motion. Furthermore, the defendant failed to address this issue adequately in his brief. The defendant has provided this court with no analysis, nor has he cited to any authority, as to why the trial court abused its discretion in denying his motion. We therefore deem this issue abandoned. See *In re Antonio M.*, 56 Conn. App. 534, 545, 744 A.2d 915 (2000); *Ferrara* v. *Hospital of St. Raphael*, 54 Conn.

App. 345, 351, 735 A.2d 357, cert. denied, 251 Conn. 916, 740 A.2d 864 (1999).

We hold that the trial court correctly granted the motion to compel and did not abuse its discretion in denying the motion to reargue and for reconsideration.

The judgment is affirmed.

In this opinion the other judges concurred.